**LEONARD, Appellant,**

v.

**ERWIN, Appellee.**

[Cite as *Leonard v. Erwin* (1996), 111 Ohio App.3d 413.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 95CA606.

Decided May 30, 1996.

*John H. Lawler*, for appellant.

*Herbert Erwin*, pro se.

HARSHA, Judge.

Plaintiff Deborah Leonard appeals from a judgment of the Adams County Court of Common Pleas reducing defendant Herbert Erwin's child support obligation for his son. Appellant assigns the following errors:

I. "The referee should not have granted a modification of child support because appellee was voluntarily unemployed or underemployed."

II. "The referee abused his discretion in imputing minimum wage to both parties and in deviating from the Child Support Guidelines in redetermining the child support obligation."

Appellant filed a complaint for divorce on February 24, 1987. In conjunction with this complaint, appellant also filed a motion for temporary orders in which she requested temporary child support in the amount of $45 per week. The court approved this motion for temporary child support by order of the same date.

The parties were subsequently granted a divorce on April 14, 1987. The court's divorce decree incorporated by reference a separation agreement which had been executed by the parties. Pursuant to Article IV of the agreement, the court approved the amount of $20 per week as appellee's child support obligation for the remainder of 1987 in order to allow him to straighten out his financial situation.[1] However, the court also ordered that this obligation would be reviewed by the court on or about January 1, 1988.

Thereafter, the court reviewed appellee's initial child support obligation at a hearing on March 28, 1988. On May 17, 1988, the court found that the previous amount of $20 per week was a fair and reasonable amount of support under the circumstances. Thus, the court ordered that amount to continue as appellee's child support obligation.

On August 14, 1989, appellant filed a motion for an order establishing appellee's child support obligation in an amount in accordance with Supreme Court

---

1. This article of the agreement also noted that, as of the date of the hearing, appellee was already $187 in arrears in his child support obligation.

guidelines. On January 11, 1990, the court approved an agreement between the parties setting the amount of appellee's child support obligation at $60 per week.

On June 6, 1994, appellant filed a motion for appellee to show cause why he should not be held in contempt due to his failure to pay the child support previously ordered by the court. As of August 1, 1994, the court noted that it was undisputed that appellee was $1,482 in arrears on his child support obligation. The court found appellee in contempt and sentenced him to fourteen days in jail. However, the jail time was suspended provided that he make the child support payments previously ordered. The court set the matter for review on October 18, 1994.

When the matter came up for review, appellee requested that the court modify his current child support obligation. Following several discovery disputes, a modification hearing was finally held on March 7, 1995. After receiving testimony from appellant, the court continued the hearing until April 18, 1995, to allow appellee to complete his 1994 income tax return.

The court then completed the hearing on April 18, 1995. In addition to receiving testimony regarding appellee's income, the court also heard evidence that appellee's child support arrearage was $2,254 as of March 30, 1995.

The referee issued a "report" on April 25, 1995.[2] According to this report, a change of circumstances existed due to appellee's loss of his township trustee's job. Apparently believing both parties to be underemployed, the referee imputed income to both appellant and appellee in the amount of the minimum wage. A child support computation worksheet, which determined appellee's child support obligation to be $131.83 per month or $30.42 per week, was attached to the report. The effective date of this modification was retroactive to October 18, 1994.[3]

Appellant objected to the referee's report; however, the trial court overruled appellant's objections and thereby approved the report as an order of the court. Appellant filed a timely notice of appeal.

At the outset, we note that an abuse-of-discretion standard normally applies when an appellate court reviews the propriety of a trial court's determination in a matter involving child support. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. Under this standard, we must determine

---

2. The "report" consisted of handwritten notes and recommendations. We urge the court to require its referees to file formal typewritten reports, as the format used here prevents effective appellate review and could be a basis for reversal in and of itself.

3. The referee also ordered appellee to pay an additional $10 per week until his arrearage is paid off.

whether a trial court's decision was more than a mere error of judgment but rather, evinces an unreasonable, arbitrary or unconscionable attitude. *Id.*

Modification of an award of child support normally requires a determination of whether there has been a substantial change in circumstances and, if so, a redetermination of the amount of child support in accordance with the guidelines in R.C. 3113.21 to 3113.219. Appellant does not contend that appellee failed to prove a change in circumstances. In fact, the referee found the appellee's loss of his township trustee position to be such a change, and we do not disturb that ruling. Rather, appellant contends that appellee was otherwise voluntarily underemployed and thus not entitled to a modification. She also argues it was error to impute income in the amount of the minimum wage to both parties. We look to the second assignment of error initially.

The Supreme Court of Ohio has held that whether a parent is voluntarily underemployed within the meaning of R.C. 3113.215(A)(5) and the amount of any potential income to be imputed to that parent "are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion." *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, 219–220, syllabus.

Ohio's child support statute permits a court to consider a person's "potential income" when it computes a support obligation if the trial court determines that the person is voluntarily unemployed or underemployed. *Id.* at 113, 616 N.E.2d at 222–223. Specifically, "potential income" is defined as:

"Imputed income that the court * * * determines the parent would have earned if fully employed as determined from the parent's employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." R.C. 3113.215(A)(5)(a).

The referee found that the following facts were established regarding appellant's income. At the time of the hearing, appellant was working as a bus driver for the Ohio Valley School District. She earned $7.85 an hour for four hours a day every day that school was in session. Her W-2 indicates that she earned $3,867.35 in 1993 from this employment. Appellant earned $123 in interest income on a joint account with her husband. Appellant and her husband also farmed together as well. On their farming operations, they had other gains of $14,996 from the sale of bulls and breed stock, but the farm showed an overall net

loss of $2,239.[4]

The following evidence was presented to the referee concerning appellee's income. Appellee earned income as a licensed real estate broker from 1976 until 1992. Although his license is currently in escrow, appellee testified that he could get it released if he filled out an application and paid a $39 fee. He also testified that he was willing to serve as an auctioneer. In fact, he earned $250 for an auction in 1994 and was preparing to earn $300 for at least one auction in 1995. In 1992 and 1993, appellee earned $5,200 each year as a trustee for Oliver Township. Like appellant and her husband, appellee also farms. However, his farming operations showed an overall net loss of $34,541 in 1993.[5]

■ In spite of this evidence regarding appellant's and appellee's income, the referee inexplicably decided to impute income to both parties in the amount of the minimum wage in order to complete the child support worksheet. We believe that this was error for two reasons. First, the lower court must find that a party is voluntarily unemployed or underemployed before it can impute any income to that party. See R.C. 3113.215(A)(5). No such finding was expressly made in this case, especially with regard to appellant. And, second, once a party is found to be voluntarily unemployed or underemployed, the potential income to be imputed to that party must be determined in accordance with the considerations listed in R.C. 3113.215(A)(5)(a). The lower court's decision to use the minimum wage, as opposed to an amount calculated after considering the factors in R.C. 3113.215(A)(5)(a), was not supported by the record.

In conclusion, although we concede that the financial evidence presented by the parties was somewhat complex, we urge the lower court to consider the following comment:

"There is simply not enough evidence on the record to support any award that the court might make which would be in the best interest of the children. *A court may not simply find that 'there was no evidence' upon which to determine a party's income and then arbitrarily assign its own figures in determining child support.*" (Emphasis *sic.*) *Bowen v. Thomas* (1995), 102 Ohio App.3d 196, 201, 656 N.E.2d 1328, 1331.

---

**4.** Appellant's 1994 federal income tax documents showed $4,034.29 in income related to her school bus job, $45 in interest income, a $1,547 capital gain related to the sale of brood cows, a $4,121 other gain related to the sale of breed stock and an overall net farm loss of $184.

**5.** In addition to appellee's $250 in auctioneering income, his 1994 federal tax documents show a $21,555 overall net farm loss. On cross-examination, however, appellee conceded that, although he is a cash basis taxpayer, he deducted certain farm related expenses on his 1994 federal tax return which had accrued in 1994, but which were not actually paid in 1994. For an analogous case, see the court's disposition in *Houts v. Houts* (1995), 99 Ohio App.3d 701, 651 N.E.2d 1031.

After reviewing the record in this matter, we conclude that the lower court's decision to impute minimum wage income to both appellant and appellee was an abuse of its discretion. Furthermore, the court should have applied the principles set forth in *Gotherman v. Gotherman* (Nov. 30, 1994), Adams App. No. 93CA566, unreported, 1994 WL 675527, in determining the gross income of both parties. After doing so, the court could then decide if appellee was voluntarily underemployed and, if so, impute income as outlined in R.C. 3113.215(A)(5)(a). Accordingly, appellant's second assignment of error is sustained and her first assignment of error is overruled as being moot. See App.R. 12(A)(1)(c).

The judgment of the Adams County Court of Common Pleas is reversed, and the cause is remanded for further proceedings in accordance with this opinion. In doing so, we direct the parties' attention to R.C. 3113.215(B)(3)(b), which expressly provides for consideration of appellee's obligations to another child who is experiencing medical difficulties.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE, P.J., and KLINE, J., concur.